FREDERICK M. PEYSER, Respondent, *against* THE METRO-POLITAN ELEVATED RAILWAY COMPANY, Appellant.

(Decided March 13th, 1885).

Owners of land abutting on a public street in the City of New York, opened under the act of April 19th, 1813, are presumed to have been assessed for the benefit to their lands and the structures which might be erected thereon by having such street open in front thereof, assuring light, air, and access thereto, while the street should remain a public street; and they are entitled to compensation for a permanent diminution of such light, air and access caused by the erection of an elevated railway in the street, authorized by the legislature for the public use.

In an action by such an owner against an elevated railway company for damages from the erection, maintenance and operation by defendant of such a railway in the street in front of his dwelling-house, *Held*, that evidence was admissible on behalf of plaintiff of the darkening of his windows by the passage of trains and the emission of smoke and steam, as well as of obscuration of light by the structure; also of the emission of smoke and stench, compelling occupants of the house to keep the windows closed, thereby causing deprivation of air; also of dampness in the street, and consequent bad smells caused by interception of sun, light and air by the structure, as showing diminished circulation of air; but that no recovery could be had on account of the noise caused by the passage of trains, nor for the shaking of plaintiff's wall by reason of the vibration of the railroad structure, the cause appearing to be that one of the columns of the structure was placed in the street close to the wall of a vault in front of the house, which wall was a continuation into the street of the party-wall of the house; that while evidence as to diminution of rental received by plaintiff from his house was proper, as some indication of the value of the property, evidence as to the effects of the railroad structure upon the value of other premises in the vicinity belonging to other persons was improper; and that testimony of experts was admissible as to diminished value of plaintiff's property, and

generally of all property in the street caused by obstruction to light, air and access, but not as to the effect of the railroad structure upon other specific property in the street.

The damage recoverable in such a case is the loss occasioned by the permanent diminution of value of plaintiff's property caused by loss or obstruction of light, air and access, resulting directly from defendant's structure and its uses.

APPEAL from a judgment of this court entered upon the verdict of a jury, and from an order denying a motion for a new trial.

The action was brought to recover damages for the erection, maintenance and operation of an elevated railroad structure in front of the plaintiff's dwelling-house, No. 106 Amity Street. The complaint set forth that Amity Street was opened under the act of April 19th, 1813; that plaintiff owned the house, and had an easement in the street for light, air and access; that defendant took possession of the street and erected a permanent structure thereon, which deprived plaintiff of part of his light, air and access, and that this was done without any proceeding to acquire the property so taken by condemnation. It was also alleged that defendant's trains made noises and emitted odors, smoke and cinders injuring the use of the premises, and caused vibrations which injured the plaintiff's walls, all to his damage in $7,000.

Defendant justified the use of the street under the several acts of the legislature authorizing the building of elevated railways, denied the taking or impairment of any easement or property of plaintiff, and denied the damage alleged.

Upon trial before a referee, the complaint was dismissed upon the merits, with costs, and judgment for defendant was entered upon the report of the referee. From the judgment plaintiff appealed. This appeal was heard at the General Term, March, 1883, and the following opinion was rendered thereon.

VAN BRUNT, J.—The counsel for the respondents have claimed that the decision of the case of *Story* v. *New York*

*Elevated R. R. Co.* by the Court of Appeals, does not apply to the case at bar, because the deed from the city of the Story lot contained a covenant that Front Street should be and remain an open street forever, and no such covenant can be shown by the plaintiff in respect to this lot.

What the plaintiff does show is, that the street in front of his lot was opened under the act of 1813, and the presumption is that the abutting owners paid for the said street by being assessed for the benefits which the opening of said street would confer upon their property. They having paid for such benefits, they are entitled to enjoy them, and certainly have an equal, if not greater, title to such enjoyment than if there had been a covenant made that the street should be and remain open forever. It may be true that the courts of this state have gone very far toward deciding that abutting owners have no rights, although they have bought and paid for the same, which the legislature are bound to respect; but the majority of the court in the Story case clearly held that where light, air and access are interfered with, to which an abutting owner is entitled by grant or contract by any corporation acting under authority of the legislature, damages for such interference must be paid. It would seem, therefore, that the Story case is decisive of the case at bar.

It was urged by the plaintiff and appellant that no new trial should be had in this action, because the referee has found all the facts necessary to enable the court to give the plaintiff an affirmative judgment. What objections the defendants may have had to testimony offered by the plaintiff upon the question of damages, or to the findings of the referee, are not before us.

Whether the defendants may not have relied to some extent upon the then condition of the decisions, as to their liability, in offering their evidence, we do not know; and certainly the General Term cannot deprive the defendants of their right to be heard upon exceptions taken to evidence and their right to except to the referee's findings.

The judgment must therefore be reversed and a new trial ordered, with costs to abide the event.

In accordance with the foregoing opinion, a second trial was had in April, 1884, by a jury, at which the jury found a verdict for plaintiff. A motion by defendant for a new trial was denied, and judgment for plaintiff was entered on the verdict. From the judgment and the order denying the motion for a new trial, defendant appealed.

*Henry H. Anderson* and *Charles F. Bauerdorf*, for appellant.

*Charles E. Whitehead*, for respondent.

J. F. DALY, J.—[After stating the facts, as above]. If defendant, by the erection of its permanent structure in Amity Street, deprived plaintiff of any part of his easement in that street, as abutting owner, he should have compensation.

When Amity Street was opened as a public street, the abutting owners were assessed for the benefit to their lots and the structures which might be erected thereon, by having a public street forever open in front thereof, assuring light, air and access thereto, while the street remained a public street. The legislature had the right to close the street, and thus to take away the benefits and easements which the adjoining owners possessed, but not without compensating such owners for the damage sustained thereby. The legislature had authority also to authorize, for the public uses, the erection of the defendant's structure upon Amity Street; but if such structure diminishes permanently the light, air and access to adjoining property, it takes away the private owner's easement to a proportionate extent for the public use, and compensation must be made therefor (*Story* v. *New York Elevated R. Co.*, 90 N. Y. 122).

The proof in this case showed the height, size and extent of the permanent structure erected by the defendants for

their elevated railroad in Amity Street, and it was proved that trains passed thereon, to and fro, at intervals of two minutes, all day. The noise made, and smoke, stench and cinders emitted from the engines were described. It was shown that the light of the lower floors was diminished, and that the windows had to be closed to exclude the smoke, stench and cinders. The jury might have found, from the mere erection of the structure and the passage of trains, as described in the evidence, that there was a diminution of the plaintiff's light and air. No such permanent structure, with the almost incessant passage of long trains of cars upon it, both ways, could be erected and maintained in a street, of the width of Amity Street, without affecting those easements of the plaintiff, and he was clearly entitled to a verdict.

The only questions to be considered are the exceptions to the admission or rejection of testimony, to the charge, and to the amount of the verdict.

The exceptions as to the evidence may be placed in classes, and disposed of generally.

All the evidence as to the darkening of plaintiff's windows by the passage of trains and the emission of smoke and steam, was properly admitted. The elevated structure was built to permit the passage of these trains, and to attempt to distinguish between the obscuration of light caused by the structure exclusively, is not to be justified on principle. The use of the street by the locomotive trains is not a public use, except in connection with the elevated structure, and the two constitute, in effect, but one obstruction.

It was also proper to admit evidence of the smoke and stench emitted by the engines, which compelled plaintiff's tenants to keep the windows closed. If the air from the street, which the windows were intended to admit, was not to be obtained except accompanied by the smell and smoke, and these latter were unbearable, there was as much a deprivation of the air as if a palpable barrier had been erected outside the window.

But I think that no recovery on account of the noise

Peyser *v.* Metropolitan R. Co.

caused by the passage of trains could be had. The uses of a public street included the passage of vehicles, and noise is a necessary consequence of such passage. The erection of a permanent structure and the use of steam cars are not the exclusive causes of the annoyance, as in the case of the obstruction of light and the effect on the air.

The evidence as to the diminution of rental received by the plaintiff from his house was proper, because the amount of rent received is some indication of the market value of the premises. It was for loss of the market value that the action was brought. The evidence, however, as to the effect of the elevated railroad structure upon the value of other premises belonging to other persons was improperly admitted. Thus, evidence as to what No. 103 West 3rd (or Amity) Street is worth now, or was worth in 1876, and what it cost the owner in 1868, and the diminution of rental value, the change in tenants, reasons for their moving, &c., &c., was wholly irrelevant to the plaintiff's cause of action. It introduced a new issue which defendants were not to be expected to try. Each claim of each owner in the street must rest upon its own legal basis without support or evidence as to damage done to other property. There is, however, no objection to any resident along the line of the street testifying generally to the obstruction of light and to smoke, steam or stench caused by the railroad and the trains.

I think that the admission of evidence of the shaking of the plaintiff's wall, and that he was compelled to take it down and re-build by reason of the vibration of the railroad structure, was improper. It was alleged that the defendant had placed one of the columns of its structure against the plaintiff's wall, but it appeared from the proof that the column was placed in the vault in front of the plaintiff's house and was built close to the wall of the vault which was a continuation of the party wall of the house. The column, however, did not rest on or near the plaintiff's premises, but in the street where it lawfully might be; and if the vault or the walls were so constructed as to be affected by the vibration, it was not a matter for which defendants could

be held liable. It appears from the case that this view was taken by the trial judge, and it was not clear how the case came to be settled with an exception to an apparent ruling to the contrary.

I think the evidence of dampness in the street and consequent bad smells caused by the interception of sunlight and air by the structure, was admissible as showing the diminished circulation of air in the street and consequent loss of air to abutting owners.

The evidence of real estate dealers and experts generally, was admissible as to the diminished value of plaintiff's property and generally of all property in the street caused by obstruction to light, air and access, but not as to the effect of the railroad structure upon other specific property in the street.

As to the rule of damages. The damage recoverable is the loss occasioned by the permanent diminution of value of the plaintiff's property caused by the loss or obstruction of light, air and access resulting directly from the defendants' structure and its uses.

There is no question as to loss accruing up to the time of trial or at any particular period. It is the permanent injury for which compensation is to be had. If we regard this as an action to recover such damages as would have been awarded to plaintiff as an abutting owner, in a proceeding under the statute to condemn so much of his property or easement in the street as was necessarily to be taken for the erection of this railroad structure, we shall arrive at the true rule of damages. In this view of the case it is proper to inquire not only what loss of value the premises had undergone up to the time of trial, but whether such loss is likely to be permanent or otherwise. If the structure, though it now diminishes value, will in time raise the value of the property in the street, that fact may be shown.

For the errors in the admission of irrelevant testimony indicated above the judgment should be reversed; and this renders it unnecessary to consider the question as to whether the damages given were excessive or not. The

errors in ruling as to the testimony were not cured by the charge. We cannot tell how much the jury were influenced in their verdict by the evidence which had been improperly admitted.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

ALLEN, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.